UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at Pikeville)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 7: 05-16-DCR |
| | ) | Civil Action No. 7: 06-172-DCR |
| V. | ) | |
| | ) | |
| KENNETH W. ANDERSON, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant Kenneth W. Anderson's ("Anderson") Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2255. According to local practice, the matter was referred to United States Magistrate Judge Robert E. Wier for the preparation of a Recommended Disposition ("R&R") under 28 U.S.C. §636(b)(1)(B). Following review, Magistrate Judge Wier recommended that Anderson's petition be denied, with prejudice, that his request for an evidentiary hearing be denied, and that a certificate of appealability be denied.

Anderson filed objections to the Magistrate Judge's R&R on April 30, 2007, raising the same arguments raised in his initial briefs. Having reviewed these objections, the record before the Court, and the relevant law *de novo*, this Court agrees with the Magistrate Judge's recommendations. Accordingly, Anderson's petition will be denied.

**I.    Factual Background**

On July 28, 2005, a grand jury sitting in the Eastern District of Kentucky returned an Indictment charging Anderson with conspiring with Jesus Loya, ("Jesse") and others to distribute and possess with intent to distribute 1,000 kilograms or more of marijuana in violation of 21 U.S.C. §§ 841 and 846.  The Indictment further charged that Anderson possessed with intent to distribute 100 kilograms or more of marijuana in violation of 18 U.S.C. § 841 and that he conspired with Jesse and others to engage in money laundering in violation of 18 U.S.C. § 1956(h).[1]

On September 9, 2005, Anderson moved to be re-arraigned on the charges contained in the Indictment.  The Court granted this motion on September 12, 2005.  On the same date, a hearing was held on the Defendant's motion at the United States Courthouse in Pikeville, Kentucky.  At the hearing, Anderson entered a guilty plea to the conspiracy and forfeiture charges (Counts 1 and 5 of the Indictment), and the United States agreed to dismiss the remaining counts related to him at the time of sentencing.  The parties also submitted a proposed Plea Agreement [Record No. 34] detailing the terms of Anderson's agreement with the United States.  The Plea Agreement was signed by Anderson and his attorney on September 9, 2005, and by Assistant United States Attorney Roger West on September 12, 2005.

According to the terms of the Plea Agreement, Anderson agreed to waive his statutory right to appeal and the right to collaterally attack his guilty plea, conviction and sentence. Additionally, Anderson agreed that the total amount of marijuana foreseeable to him was 1,000

---

[1]    Anderson is also charged in Count 5 of the Indictment, which is a forfeiture provision pursuant to 21 U.S.C. § 853.

kilograms, resulting in a base offense level of 32 pursuant to § 2D1.1 of the United States Sentencing Guidelines. The United States agreed to request a two level decrease for Anderson's acceptance of responsibility, as well as an additional one level decrease at the time of sentencing. The United States further stated that it intended to file a motion for downward departure because Anderson had provided substantial assistance. However, the Plea Agreement noted that the decision to file the motion for downward departure was solely within the discretion of the United States. The proposed Plea Agreement also contained a factual statement detailing those facts that the parties agreed the United States could prove beyond a reasonable doubt.

The factual statement contained in the Plea Agreement provided in its entirety as follows:

(a) That beginning on or about a day in January 2004, the exact date unknown, through on or about July 7,2005 this defendant engaged in a conspiracy with Jesus Loya aka "Jesse" and others to possess with the intent to distribute and to distribute marijuana. During this time period shipments of marijuana were brought into and received in the EDKY. Shipments of United States currency were sent back to the source of the marijuana by different means. One of these methods included the physical transportation of said money by Jesus Loya. This conspiracy involved the importation and transportation of loads of marijuana from places outside of the EDKY to the EDKY. The marijuana was brought into the EDKY in large bulk shipments. It was stored at several locations in and around Pike County and Virginia.

(b) Specifically within the time frame of Count 1, this defendant and others did store marijuana at the direction of others named and unnamed in this document. One of these locations was the defendant's residence. On or about June 24, 2005 members of the Kentucky State Police and the Drug Enforcement Administration conducted searches at the defendant's residence in Pike county did transport marijuana for distribution to a garage location on Jenkins Highway in Dorton, Ky. in the Pike County area in the EDKY. This defendant knew and understood that the marijuana was being distributed and proceeds from this distribution were then circulated back to the suppliers. This defendant knew and understood that said drug proceeds were transported across state lines in sums greater than $10,000 for payment for the loads of marijuana.

(c) On or about June 8, 2004, a federal search warrant was executed at the residence of this defendant on Brushy Fork Road, in Jenkins, Kentucky. During the course of that search, approximately 100 pounds of marijuana was seized. Also, during the course of that search approximately $19,900 and $6,464 in United States currency was seized. This defendant stipulates and agrees that said assets represent proceeds or substitute proceeds from the distribution of marijuana. Said amount of marijuana was an amount consistent with possession with the intent to distribute.

(d) The total amount of marijuana foreseeable to this defendant as a part of this conspiracy is 1000 kilograms.

[Record No. 34, p. 2-3][2]

At the re-arraignment hearing held on September 12, 2005, both the Court and the Assistant United States Attorney went over all the pertinent terms of the Plea Agreement. The Court then conducted an extensive colloquy with the Defendant, in which the undersigned determined that he was competent to enter a plea, that he did so knowingly and voluntarily, and that he understood all the rights he was giving up by entering his guilty plea. In particular, the Court confirmed that Anderson had reviewed his Plea Agreement with his attorney and that he understood its relevant terms and conditions. [Record No. 38, p. 12] Additionally, the Court confirmed that Anderson understood the maximum penalties for the charges and any special assessments that would be imposed [*Id.* at p. 18, 20], the application of the sentencing guidelines and other factors at sentencing [*Id.* at p. 21-24], and the fact that he was waiving his "statutory

---

[2] Anderson raises one factual objection to the Magistrate Judge's statement that on "June 8, 2004 authorities uncovered a 100 pounds [sic] of marijuana and $26,364.00 in U.S. Currency" at Defendant's residence. [Record No. 94 ¶ 1] According to Anderson, the money was not seized from his residence. However, Anderson fails to point to any evidence in the record to contradict the Magistrate Judge's assertion. Anderson stipulated to the seizure of the money from his residence in the factual statement of his plea agreement, and this Court finds his objection to the Magistrate Judge's statement of the facts to be without merit. Accordingly, Anderson's objection will be overruled.

right to appeal and the right to attack collaterally the guilty plea, conviction, and the sentence in the case." [*Id*. at 25]

Anderson further asserted that he understood that he would not be able to withdraw his guilty plea if his attorney's prediction or his belief about the guidelines was inaccurate or if the sentence imposed was more severe than he might have expected. [*Id*. at 25-26] The Court then reviewed the charges and verified the substance of Anderson's factual statement in support of his plea. When asked to explain in his own words what he did to be guilty of Count 1 of the Indictment, Anderson stated that he "[c]onspired with Jesse on 1,000 kilograms of marijuana." [*Id*. at 29] At the conclusion of the hearing, the Court accepted Anderson's guilty plea and found that it was knowing and voluntary and supported by an independent basis in fact. [*Id*. at 34.]

Anderson was sentenced on December 19, 2005. At that time, the Court again reviewed and accepted the Plea Agreement previously tendered by the parties and granted the United States' motion to dismiss the remaining counts related to this Defendant. [Record Nos. 53, 54] The Court also granted the United States' motion for a downward departure pursuant to § 5K1.1 and 18 U.S.C. § 3553(e). Thereafter, Anderson was sentenced to 97 months imprisonment, five years of supervised release, and a special assessment of $100.00. As the Magistrate Judge noted in his Recommended Disposition, this sentence fell below the 120 month statutory minimum and the advisory guideline range.[3]

---

[3] The Magistrate Judge summarized this Court's determination of the applicable guideline range as follows:

> In determining the applicable guideline range, the District Court initially assessed Defendant with a base offense level of 32 due to the stipulated amount of drugs involved. *See* Sentencing Hearing at 17-18. The District Court reduced this level by 3 points for Defendant's acceptance of responsibility. *See id.* at 18. This produced an adjusted offense

On August 21, 2006, Anderson filed the current petition for habeas relief pursuant to § 2255. In summary, he contends that: (1) he did not knowingly and voluntarily waive his right to collaterally attack his conviction and sentence; (2) he received ineffective assistance of counsel; (3) his base offense level should have reflected his "mitigating role" in the conspiracy; (4) the Court miscalculated the drug quantity foreseeable to him; (5) he should have qualified for a "safety valve" reduction pursuant to 18 U.S.C. § 3553(f); (6) he should have received a greater downward departure for substantial assistance; (7) the Court should retroactively apply *Apprendi*, *Blakely* and *Booker* on collateral review; and (8) the Court should expunge the counts dismissed at the time of sentencing. Finally, Anderson contends that the Court should hold an evidentiary hearing on his ineffective assistance of counsel claim.

The Magistrate Judge thoroughly addressed all of Anderson's arguments in the R&R entered April 26, 2007. [Record No. 92] In relevant part, he concluded that Anderson had knowingly and voluntarily waived his right to appeal and collaterally attack his conviction and sentence and that his claims of ineffective assistance of counsel did not alter this conclusion. In addition, the Magistrate Judge reviewed all of Anderson's remaining substantive claims and recommended in the alternative that those claims be rejected on the merits. [Record No. 92, p.12] Anderson filed his objections to the Magistrate Judge's recommendation on April 30, 2007.

---

level of 29. *See id.* The District Court then determined that Defendant had four criminal history points due to three DUI and one aggravated assault convictions. *See id.* at 5, 18. Consequently, Defendant fell within the third criminal history category. *See id.* at 18. Based on Defendant's adjusted offense level and criminal history category, Defendant's advisory guideline sentencing range was 108 to 135 months. *See id.*

[Record No. 92, p. 4, n.1]

## II.     Legal Standard

Under 28 U.S.C § 2255, "[a] prisoner in custody . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255. In making such a request, a prisoner may claim that the sentence was imposed in violation of the Constitution or federal law, that the court was without jurisdiction to impose the sentence, that the sentence was in excess of the maximum authorized by law, or that it is otherwise subject to collateral attack. *Id.* "To prevail on a § 2255 motion alleging constitutional error, the petitioner must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings." *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citations omitted). Additionally, "[t]o prevail on a § 2255 motion alleging non-constitutional error, the petitioner must establish a 'fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process.'" *Id.* (citations omitted).

## III.    Analysis

A district court must make a *de novo* determination of those portions of a magistrate judge's R&R to which an objection is made. 28 U.S.C. § 636(b)(1)(C). However, "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

In the present case, the majority of Anderson's objections relate to the Magistrate Judge's determination that he knowingly and voluntarily waived his right to collaterally attack his guilty

plea, conviction and sentence. [Record No. 94, ¶ 2-5] According to the Defendant, "the record reflects that Anderson was not expressly informed that when he agreed to the waiver, he was in essence giving up his right to effective assistance of counsel. Under the facts of this case Anderson's plea could not have been voluntary given the circumstances." [Record No. 94, p.2]

"It is well settled that a defendant in a criminal case may waive any right, even a constitutional right, by means of a plea agreement." *United States v. Calderon*, 388 F.3d 197, 200 (6th Cir. 2004) (citing *United States v. Fleming,* 239 F.3d 761, 763-64 (6th Cir. 2001)). The Sixth Circuit has held that the right to collaterally attack a conviction and sentence may be waived in a plea agreement, so long as the waiver is "informed and voluntary." *Watson*, 165 F.3d at 489. However, the court recently noted that such a waiver does not apply to claims "that go to the very validity of a guilty plea," such as "where a defendant argues that his plea was not knowing or voluntary, or was the product of ineffective assistance of counsel." *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007). According to the court in *Acosta*, "it would be entirely circular for the government to argue that the defendant has waived his right to an appeal or a collateral attack when the substance of his claim challenges the very validity of the waiver itself." *Id*.

Here, Anderson objects to the Magistrate Judge's conclusion that he validly waived his right to collaterally attack his guilty plea on two grounds. First, he claims that his trial counsel failed to advise him that he was giving up his right to bring an ineffective assistance of counsel claim and, therefore, his waiver was not knowing and voluntary. Second, he claims that his ineffective assistance of counsel claims are sufficient to defeat the waiver because "counsel

rendered ineffective assistance of counsel in advising him to waive his appellate rights." [Record No. 94, p.2]

Rule 11 of the Federal Rules of Criminal Procedure requires that a district court verify that a defendant's plea is voluntary and that the defendant understands his or her applicable constitutional rights, the nature of the crime charged, the consequences of the guilty plea, and the factual basis for concluding that the defendant committed the crime charged. *United States v. Goldberg,* 862 F.2d 101, 106 (6th Cir. 1988); Fed. R. Crim. Pro. 11. Additionally, under Rule 11(b)(1)(N), "the court must inform the defendant of, and determine that the defendant understands the consequences of any appellate-waiver provision in the plea agreement" before accepting the defendant's guilty plea." *United States v. McGilvery*, 403 F.3d 361, 363 (6th Cir. 2005).

In *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999), the Sixth Circuit held that a trial court's proper plea colloquy cures any misunderstandings that a defendant may have about the consequences of a plea. In this case, there is nothing in the record to suggest that Anderson misunderstood the scope of his waiver of right to appeal and collaterally attack his conviction and guilty plea. Anderson indicated at his plea hearing that he had reviewed the plea agreement with counsel, that he understood all of the agreement's provisions, and that his guilty plea was not coerced. Moreover, the record reflects that he was fully aware that no particular sentence could be promised and that the Court would determine the final sentence.

As the Magistrate Judge expertly concluded in his R&R,

> [t]he record in the instant matter reflects an informed and voluntary wavier. By signing the plea agreement, Defendant acknowledged that he reviewed it with

>  counsel and understood its terms.  *See* Plea Agreement ¶ 17.  At rearraignment, Defendant again affirmed before the District Court that he read the plea agreement, reviewed it with counsel, and understood its provisions.  *See* Rearraignment Hearing at 12.  He also listened as the United States Attorney summarized the terms of the plea agreement, including the waiver provision. *See id.* at 15.  Defendant and his counsel both agreed that the summary was accurate. *See id.* at 16.  In addition, the District Court personally addressed Defendant and specifically informed him of the waiver provision.  *See id.* at 24-25.  Defendant again acknowledged his understanding.  *See id.* at 25.  Defendant's responses were voluntary and under oath, and the District Court established Defendant's competency at the start of the hearing.  *See id.* at 4-7, 34.
>
>  In light of this overwhelming record, Defendant cannot demonstrate that he misunderstood the consequences of waiving the "right to attack collaterally" his conviction or sentence.  *See Jones v. United States*, 120 Fed. Appx. at 596. Plainly, Defendant's repeated acknowledgments – voluntarily provided under oath – refute the conclusory and unsupported allegation that he unknowingly agreed to the waiver.  *See id.*

[Record No. 92, p.8-9] This Court agrees with the Magistrate Judge's conclusions and finds that Anderson knowingly and voluntarily waived his right to attack collaterally his guilty plea, conviction and sentence.

The Magistrate Judge also correctly concluded that Anderson's claims of ineffective assistance of counsel were insufficient to defeat the waiver under *Acosta*. The Magistrate Judge found that "[t]o the extent that Defendant attacks his waiver based on ineffective assistance of counsel, those claims are without merit. Defendant offers no credible evidence of ineffective representation in connection with his waiver, which occurred in a knowing and voluntary fashion." [*Id.* at 11]

To succeed on an ineffective assistance of counsel claim, a defendant must prove that his counsel's performance was deficient and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  "Ineffective assistance under *Strickland*

is deficient performance, with performance being measured against an 'objective standard of reasonableness,' 'under prevailing professional norms.'" *Id.* (citations omitted). A petitioner must then show that there is a reasonable probability that, but for counsel's inadequate performance, the results would have been different. *Strickland*, 466 U.S. at 687. The court's scrutiny of counsel's performance is highly deferential, and counsel is strongly presumed to have rendered adequate assistance and have made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 689; *Bigelow v. Williams*, 367 F.3d 562, 570 (6th Cir. 2004).

Here, Anderson's contention that his counsel rendered ineffective assistance in advising Anderson to waive his appellate rights does not satisfy either prong of the *Strickland* test. First, under the objective standard of reasonableness, Anderson cannot show that his counsel was ineffective solely because he advised Anderson to waive his appellate rights. Waivers of the right to appeal and collaterally attack a guilty plea are often included in plea agreements, and the Sixth Circuit has expressly held that such waivers enforceable if they are informed and voluntary. *Watson*, 165 F.3d at 489; [Record No. 38, p.25] Moreover, Anderson cannot show that he was prejudiced by waiving his right to appeal. As the Magistrate Judge noted,

> As a result of the plea agreement and Defendant's cooperation, two charges were dismissed, and Defendant received a significantly lighter sentence that fell below the statutory minimum and the advisory guideline range. In view of this outcome, Defendant does not credibly show that he was prejudiced by the waiver or that counsel performed ineffectively. *See Strickland*, 104 S.Ct. at 2064, 2068; *Leyva*, 2002 WL 31056694, at *2.

[Record No. 92, p.11]

After reviewing the record *de novo* in light of Anderson's objections, this Court also agrees with the Magistrate Judge's conclusion that Anderson knowingly and voluntarily waived his right to collaterally attack his guilty plea, conviction and sentence. Additionally, this Court agrees that Anderson's claims of ineffective assistance of counsel in connection with the waiver lack merit. Therefore, the waiver is enforceable and Anderson's petition under § 2255 will be denied.

Because Andersonn validly waived his right to collaterally attack his guilty plea, conviction and sentence, this Court need not address the remaining claims raised in his petition. However, the Magistrate Judge addressed these claims and alternatively recommended that they be denied on the merits. This Court also finds that Anderson's remaining claims under § 2255 should be denied.

As to Anderson's claim that the drug quantity in this case was miscalculated, Anderson clearly stated on the record that he "[c]onspired with Jesse on 1,000 kilograms of marijuana." [Record No. 13 p. 29] This information was repeated multiple times in Anderson's plea agreement with the United States [*See* Record No. 53, ¶ 4(d) and ¶ 8(b)], and this Court is in complete agreement with the Magistrate Judge's conclusion that there was no error in the calculation of the drug quantity attributable to Anderson.

It is also clear that Anderson was not entitled to a "mitigating role" adjustment at sentencing with respect to his involvement in the conspiracy. As the Magistrate Judge noted,

> Defendant admitted that he actively engaged in the transportation, storage, and distribution of large amounts of marijuana. The stipulated factual account further implies that Defendant collected and handled substantial proceeds from the illicit drug transactions. The various services performed by Defendant highlight his

> critical role in the conspiracy and do not suggest that Defendant is entitled to a reduction under § 3B1.2. . . .
>
> Moreover, the mutually accepted guideline recommendations in the plea agreement did not include a mitigating role adjustment. This conspicuous omission suggests that the parties originally agreed and did not believe that the mitigating role provision applied under the facts of the case. In light of all these circumstances, the Court finds that there is no basis to apply the "mitigating role" adjustment in this matter.

[Record No. 92, p. 14 (citations omitted)]

Additionally, this Court does not find any error in the Magistrate Judge's conclusion that Anderson was not entitled to a "safety valve" reduction under 18 U.S.C. § 3553(f). The record reflects that Anderson was convicted of one aggravated assault and three DUI offenses, all of which are included in the criminal history calculations under § 4A1.2(c) of the Sentencing Guideline Manual. Thus, this Court found that Anderson had four criminal history points, making him ineligible for the safety valve reduction under 18 U.S.C. § 3553(f)(1). Accordingly, Anderson cannot show that he was entitled to the reduction on collateral review.

Anderson's last objection relates to the Magistrate Judge's determination concerning the downward departure under § 5K1.1 of the Sentencing Guidelines. The Magistrate Judge concluded that Anderson's argument in this regard was "baseless" because the United States did move for downward departure and this Court granted the motion. [Record No. 92, p.17-18] However, Anderson contends that the Magistrate Judge failed to consider the extent of that departure and that he was entitled to a greater departure because the government put him in danger by "blowing his cover."

A district court has "complete discretion regarding whether to grant a downward departure for substantial assistance and how much of a departure to grant." *United States v. Jones,* 417 F.3d 547, 550 (6th Cir. 2005); *see also United States v. Schray*, 383 F.3d 430, 433 (6th Cir. 2004) ("[T]he government does not have the ability to request anything more than a departure; the extent of the departure is governed by the district court's discretion, as bounded by applicable law."). In the present case, the statutory minimum sentence for Count 1 of the Indictment was 120 months, and this Court determined that the applicable advisory guideline range was 108 to 135 months. In granting the United States motion for downward departure, the Court ultimately sentenced Anderson to 97 months imprisonment and five years of supervised release. This discretionary decision is completely reasonable under the circumstances presented, and Anderson's argument that he is entitled to a greater departure is wholly without merit. Therefore, his objection to Magistrate Judge's R&R on this issue will be overruled.

Finally, the Court notes that Anderson has not objected to the Magistrate Judge's recommendations that this Court deny his claims regarding the application of *Apprendi*, *Blakely*, and *Booker*, the expungement of the counts dismissed at sentencing, his request for an evidentiary hearing, or his request for a certificate of appealability. The Magistrate Judge determined that no evidentiary hearing was necessary because Anderson's claims involved completely legal issues that could be addressed by the fully developed record in this case. The Magistrate Judge further determined that Anderson was not entitled to a certificate of appealability because he had failed to make a "substantial showing" of the denial of a constitutional right. [Record No. 92, p. 20-21]

As noted previously, under 28 U.S.C. § 636(b)(1)(c), "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). However, this Court has reviewed the remaining issues raised in Anderson's petition *de novo*, and is in complete agreement with the Magistrate Judge's analysis and recommendations.

### IV. CONCLUSION

Having reviewed the Magistrate Judge's Recommended Disposition filed on April 16, 2007, together with the objections filed by Anderson on April 30, 2007, it is hereby

**ORDERED** as follows:

1. The Recommended Disposition of United States Magistrate Judge Robert E. Wier [Record No. 92] is **ADOPTED** and **INCORPORATED** by reference.

2. The Anderson's objections [Record No. 94] to the Magistrate Judge's Recommended Disposition are **DENIED**.

3. Anderson's motion to vacate, set aside, or correct sentence, pursuant to 28 U.S.C. § 2255 [Record No. 71] is **DENIED**.

4. The United States' motion to dismiss [Record No. 82] is **GRANTED**.

5. A certificate of appealability shall not issue because Anderson has not made a substantial showing of the denial of a constitutional right.

6. This habeas proceeding shall be **DISMISSED** and **STRICKEN** from the docket. This 8th day of June, 2007.



Signed By:
*Danny C. Reeves* DCR
United States District Judge